STATE of Missouri,
Plaintiff/Respondent,

v.

Alonzo TOLEN, Defendant/Appellant.

No. ED 91541.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 27, 2009.

Jessica Hathaway, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

## OPINION

MARY K. HOFF, Judge.

Alonzo Tolen (Defendant) appeals from the judgment upon his conviction by a jury for two counts of child molestation in the first degree, Section 566.067, RSMo Cum. Supp.2007,[1] for which Defendant was sentenced to concurrent terms of six years imprisonment. On appeal, Defendant argues the trial court erred in: (1) overruling Defendant's motion for judgment of acquittal at the close of evidence because there was insufficient evidence to support one of the charges of child molestation in the first degree, and (2) refusing to allow Defendant to present evidence of prior inconsistent statements made by Defendant's daughter (Victim). We reverse, in part, and affirm, in part.

*Factual and Procedural Background*

Defendant was charged with three counts (Counts I–III) of child molestation in the first degree, Section 566.067. Following a jury trial, Defendant was convicted on Counts I and III. Defendant contests the sufficiency of the evidence to support his conviction on Count III.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed the following: Victim was nine-years-old at the time of trial. When Victim was in the second grade, she lived in her Aunt's[2] house in the City of St. Louis, along with Defendant and her older brother. Victim testified that she slept in the basement with Defendant and that Defendant touched her "inappropriately." She said that Defendant touched her "privates" with his "privates." Victim testified that she was touched in the part of the body that only a girl has. She said that the touching happened in the basement and that she had her clothes on.

Victim's brother, who was eleven-years-old at the time of trial, testified that Victim sometimes slept in the basement with Defendant. He said that he went to the bathroom one night and saw a lot of movement when he looked downstairs. Defendant was in the bed, under the covers. Victim's brother woke Victim up, took her upstairs, and put her in bed.

Aunt's daughter-in-law testified that she was also staying at the house when Defendant and his children were living there. She said that she woke up one night to go to the bathroom and saw Defendant and

---

1. Unless otherwise indicated, all further statutory references are to RSMo. Cum.Supp.2007.

2. Aunt was Victim's second cousin, but Victim referred to her as an aunt.

Victim in bed together. Defendant's pants were pulled all the way down to his ankles. On another occasion, she saw Victim sitting on Defendant's lap, "where his private area is."

In February of 2007, Victim told Aunt that Defendant had touched her. Victim pointed to her breasts and her genital region to indicate where the touching had occurred. Victim told Aunt that Defendant had pulled her "butt" close to his private parts and that he touched her private parts with his hand. Aunt called the police. Victim did not want to talk to the detective, telling him that she was scared and that he should talk to her brother. Victim's brother told the detective that Defendant took Victim downstairs and "molested" her. When asked what he meant by "molested," Victim's brother said that Defendant used his hand to touch Victim on her private parts and on her "butt." Victim's brother told the detective that he had gone downstairs one time and saw Defendant with his hand down the front of Victim's pajama pants. Defendant pulled his hand out as Victim's brother got closer to the bed.

Victim was taken to Children's Hospital, where she was interviewed by a pediatric social worker. Victim told the social worker that Defendant touched her in her "privates." When asked to clarify what she meant by privates, Victim pointed to her vaginal area and her buttocks. The social worker testified that Victim was consistent throughout the interview in calling her vaginal area and her buttocks her privates. Victim said that the touching happened in Defendant's room in the basement of the house. Victim also consistently stated throughout the interview that she was wearing pajamas when the touching occurred. Victim further said that Defendant exposed his penis, telling the interviewer, "He wears shorts and takes his private out. I lay on bed watching TV and he pulls me in and pulls me all around." Victim said that Defendant also touched her privates with his hand. She described the touching as being over her clothing and said that it involved a "rubbing" motion. Victim also testified:

My dad tells me to go downstairs to watch TV, but I make up excuses so I don't have to go downstairs. I say I'm hungry or something. Sometimes I cannot think of anymore excuses so I go down there. I don't like to go down there because I am always by myself and no one sees what he does.

I watch TV on his bed. He lays down beside me and pulls me in. He touches my privates and it feels nasty.

The jury was instructed on three counts of child molestation in the first degree, Section 566.067. Count I required the jury to find that Defendant touched the genitals of the victim through the clothing while she was awake; Count II that Defendant touched the genitals of Victim through the clothing while she was asleep; and Count III that Defendant touched the anus of the victim through the clothing. The jury convicted Defendant on Counts I and III, and acquitted him on Count II. The trial court sentenced Defendant to concurrent six-year sentences on Counts I and III. This appeal follows.

*Sufficiency of the Evidence*

In his first point, Defendant argues the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of evidence because there was insufficient evidence to support Count III, child molestation in the first degree. Defendant argues that there was insufficient evidence to support the jury's finding that Defendant touched Victim's anus through her clothing. We agree.

When considering sufficiency of the evidence claims, appellate review is limited to determining whether the evidence is sufficient for a reasonable juror to find each element of the crime beyond a reasonable doubt. *State v. Copeland,* 95 S.W.3d 196, 199 (Mo.App. S.D.2003). In applying this standard, the reviewing court must consider the record in the light most favorable to the verdict, taking as true the evidence and all logical inferences that support a finding of guilt and ignoring the evidence and inferences that do not support a finding of guilt. *Id.*

Section 566.067 provides: "A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.067.1. Section 566.010 defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3).

Instruction 7[3] instructed the jury as follows with respect to Count III:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that between January 1, 2007, through February 24, 2007, in the State of Missouri, the defendant touched the anus of [Victim] through the clothing, and

Second, that he did so for he purpose of arousing or gratifying his own sexual desire, and

Third, that [Victim] was less than fourteen years old, then you will find the defendant guilty of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

At trial, Victim testified that Defendant touched her "inappropriately" on her "privates." Victim described the part of her body Defendant touched as "a part only a girl has and not a boy." Victim testified that during the touching, she was wearing clothes.

A medical social worker at St. Louis Children's Hospital interviewed Victim and testified that Victim told her Defendant touched her privates. The social worker asked Victim to explain what she meant by privates and Victim pointed to her vaginal area and buttocks. The social worker testified that Victim was consistent in referring to her vaginal area and buttocks as her "privates" throughout the interview. She testified Victim told her that Defendant would take "his private out . . . . and he pulls me in and pulls me all around."

A pediatric emergency doctor at St. Louis Children's Hospital testified that there was no immediate examination of Victim's genitalia, but a later exam did not indicate any physical findings or injury.

A detective in the child abuse unit for the City of St. Louis Police Department testified that Victim was "scared" to talk to him, and to speak to her brother instead. Victim's brother told the detective that Defendant would take "his hand and [touch Victim] on her private parts and on her butt." Victim's Aunt told the detective that Victim had told her that Defendant had "been pulling her butt close to his private parts, and that he takes his hand and touches her on the private parts."

---

**3.** Instruction 7 was modeled after MAI–CR 320.17.

■ "Anus" is defined as "the posterior opening of the alimentary canal." *State v. Hahn*, 35 S.W.3d 393, 395 (Mo.App. E.D. 2000) (*citing State v. Strughold*, 973 S.W.2d 876, 883 (Mo.App. E.D.1998)). "Butt" is defined as "buttocks." *Id.* A "buttock" is defined as "either of the rounded parts at the back of the hips; either half of the rump." *Hahn*, 35 S.W.3d at 395. Evidence that a defendant touched a victim's "butt" or "buttocks" is insufficient to show the defendant touched the victim's "anus." *Id.* (*citing Strughold*, 973 S.W.2d at 883–84).

Missouri courts have held that a jury could infer contact with the victim's "anus" from testimony that the defendant touched the victim's "butt," "behind," or "bottom" when specific evidence supports such an inference. *See State v. Copeland*, 95 S.W.3d 196, 200 (Mo.App. S.D.2003) (sufficient evidence to infer defendant had contact with the victim's "anus" where the victim told investigators that defendant rubbed his "butt" with his hand "almost all the time" and that this activity "stung" and where the physical examination revealed "abnormalities" of the anus); *State v. White*, 873 S.W.2d 874, 878 (Mo.App. E.D. 1994) (sufficient evidence to infer defendant had contact with the victim's "anus" where there was testimony of several witnesses that the victim told them defendant put his penis "up his butt" and did "push-ups" on him and where victim had difficulties controlling his bowels immediately after returning from defendant's home); *State v. Durbin*, 834 S.W.2d 837, 839 (Mo. App. E.D.1992) (sufficient evidence to infer defendant had contact with the victim's "anus" where the victim testified defendant hurt her, placed his finger near the area where she goes to the bathroom through her underwear, and that it poked inside her); *State v. Moore*, 721 S.W.2d 141, 143 (Mo.App. E.D.1986) (sufficient evidence to infer defendant had contact with the victim's "anus" where victim testified the defendant tried to force his penis up the victim's "behind" and where an emergency room physician found abnormal redness around the victim's anus); *State v. O'Neal*, 651 S.W.2d 634, 637 (Mo.App. S.D. 1983) (sufficient evidence to infer defendant had contact with the victim's "anus" where there was evidence that victims "almost yelled" and "tried not to cry" because "it hurt '[p]retty bad,'" when defendant touched their "bottoms").

■ In the instant case, there was no evidence to support an inference that Victim's "anus" was touched. This case is similar to *Hahn* where the court reversed the conviction because the state made no effort to establish that the victim's anus was part of, the anatomy to which the witness was referring when the term "butt" was used. *Hahn*, 35 S.W.3d at 395. The court also held that the state failed to produce other evidence consistent with a finding that defendant touched the victim's "anus." *Id.*

Here, the State relied on the following evidence to identify the body part Defendant touched in Count III and to argue there was sufficient evidence for the jury to reasonably infer that Defendant touched Victim's anus through her clothing: testimony that Victim had been seen sitting on Defendant's lap on top of his genital region; statements by Victim that Defendant had exposed his penis, pulled Victim close to him and "pulled [her] all around," had pulled her "butt" close to his "privates," and that the touching was "nasty." Under the caselaw, this evidence is insufficient to support an inference that Defendant touched Victim's "anus" because there was no specific evidence that the word "butt" or "privates" was synonymous with "anus." *Hahn*, 35 S.W.3d at 395; *Strughold*, 973

S.W.2d at 883. Count III is reversed and vacated. Point I is granted.

### Prior Inconsistent Statement

In his second point, Defendant contends the trial court abused its discretion in excluding Exhibit A, an audio recording of phone conversations between Defendant and Victim. Defendant contends the recordings were admissible as prior inconsistent statements of Victim and their exclusion prejudiced Defendant. We disagree.

During cross-examination, defense counsel questioned Victim about conversations she had with Defendant in jail. Victim stated that she had spoken twice with Defendant on the phone, with the most recent conversation taking place about a month before trial. Victim was then asked whether she had told Defendant's sister that Aunt had "put [her] up to" saying that Defendant touched her. Victim denied making the statement to Defendant. Defense counsel then had the following colloquy with Victim about her phone conversations with Defendant:

Q. Now, do you remember talking to [Defendant] on the phone? You do remember that, right?

A. Yes.

Q. Do you remember telling [Defendant's sister] that [Aunt] lied?

A. I never said nothing like that.

Q. Do you remember saying that?

A. I didn't tell him that.

Q. What did you tell [Defendant]?

A. He asked me was I doing good at school and I said yeah.

Q. Okay.

One second please, Your Honor.

Okay. Was that the most recent conversation you had with [Defendant] about school?

A. Yes.

Q. Now, think back to the first conversation you had when you talked to him on the phone. The very first time while he was still in jail. Do you remember that?

A. (Indicating.)

Q. You have to answer out loud.

A. Yes.

Q. Now, at that conversation you actually were with your brother, too, right?

A. Yes.

Q. And [Defendant] called from the jail to [Defendant's sister's] house, right?

A. Yes.

Q. Am I saying that right?

A. Uh-huh.

Defense counsel then questioned Victim about another phone conversation concerning money that was allegedly owed to Defendant:

Q. And is that when you told [Defendant] about this money that was owed to him by [Defendant's sister], thousand dollars?

A. (Indicating.)

Q. No? Is that what you're saying? You're shaking your head.

A. No.

Q. Did you know about that money?

A. No.

Q. So you never said anything to [Defendant] about that money?

A. (Indicating.)

Q. And you never said anything to [Defendant] about [Aunt] putting you up to this story, did you?

A. No.

Q. You didn't say that?

A. No.

Later, during a break in the State's case, defense counsel informed the trial

court that he was considering offering tape recordings of conversations between Defendant and Victim. Defense counsel indicated that he wanted to offer into evidence two phone conversations, both of which occurred on April 14, 2007, approximately a month before trial. The prosecutor objected on the basis that the recordings contained self-serving exculpatory statements by Defendant. The prosecutor also noted that she had filed Victim tampering and witness tampering charges against Defendant arising out of those phone calls.

Defense counsel agreed that Defendant's portion of the conversation was exculpatory, but stated that when Defendant asked Victim why she lied, Victim said that she did not lie, Aunt lied. Defense counsel described that part of the conversation as "along the lines of Aunt ... put me up to it, but not exactly saying that." The prosecutor responded that anything that Victim said on the recordings would not be proper impeachment of Victim, given the manner of the questions posed to her on the stand. The trial court deferred a ruling while the State continued with its case.

After the State rested its case, defense counsel renewed his request to offer the recordings of the phone conversations on April 14, 2007. Defense counsel told the trial court that he wanted to offer the recordings to impeach the testimony of Victim and of Aunt. The prosecutor again objected on the basis that the recordings contained self-serving exculpatory statements by Defendant and that the recordings were improper impeachment based on the questions posed to Victim by defense counsel.

Defense counsel agreed that the questions asked of Victim on cross-examination were not specifically asked or stated on the tapes. Defense counsel stated that the foundation he laid for an inconsistent statement was to ask Victim if Aunt "put

her up to it," but that what Victim actually said on the recording was that she did not lie, Aunt lied. The trial court sustained the State's objection. Defense counsel deposited a copy of the recordings, marked as Exhibit A, with the trial court as an offer of proof. Defendant also included a claim in his motion for new trial that the trial court erred in excluding Defendant's Exhibit A, because the recordings of conversations from April 14, 2007 would have shown that Victim made statements which would have impeached her trial testimony and that of Victim's brother and of Aunt.

We review the trial court's decision to exclude the evidence offered by defense counsel for abuse of discretion. *State v. Sanders,* 126 S.W.3d 5, 20 (Mo.App. W.D. 2003). We review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Santillan,* 1 S.W.3d 572, 579 (Mo. App. E.D.1999).

Section 491.074, RSMo 2000, provides: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." Section 491.074, RSMo 2000. To admit a prior inconsistent statement as substantive evidence, the only necessary foundation is the inquiry as to whether the witness made the statement and whether the statement is true. *State v. Reed,* 282 S.W.3d 835, 838 (Mo. banc 2009). Prior statements may be used to impeach the credibility of a witness only if the judge is satisfied that the prior statements are, in fact, inconsistent. *State v. Franks,* 685 S.W.2d 845, 850 (Mo.App. E.D.1984). Absent the threshold showing of an inconsis-

tency between the testimony and the statements contained within the proffered exhibits, use of the exhibits to impeach is questionable. *Id.*

 At trial, defense counsel asked Victim if she remembered telling Defendant that Victim told Defendant's sister that Aunt had lied, and Victim denied telling him that. However, during the phone conversations included in Exhibit A, Victim told Defendant that Aunt lied. Defense counsel admitted that the statements made by Victim in the phone conversations were not exactly the same as the questions that he asked on cross-examination. Defense counsel therefore failed to lay the proper foundation to admit the recordings as impeachment evidence.

 Even assuming, however, that Defendant did lay the proper foundation for admitting the statement under the statute, the exclusion did not result in prejudice given that Aunt was subject to cross-examination at trial and Defendant's guilt was otherwise established by strong evidence, including eyewitness testimony of Victim's brother, testimony of child abuse experts, as well as Victim's own testimony. *See Sanders,* 126 S.W.3d at 23 (while a presumption of prejudice is created when admissible evidence is improperly excluded in a criminal case, that presumption may be overcome by the facts and circumstances of the particular case). Under the circumstances, the trial court's exclusion of the statements was a proper exercise of discretion. Point II is denied.

### Conclusion

On Point I, there was insufficient evidence to show that Defendant touched Victim's anus; therefore, there was insufficient evidence to support Count III. We reverse the trial court's judgment with respect to Count III and vacate the sentence imposed therein. On Point II, the trial court did not abuse its discretion in excluding Exhibit A. The judgment is affirmed regarding Count I.

GLENN A. NORTON, Presiding Judge and LAWRENCE E. MOONEY, Judge, concur.