STATE of Missouri, Respondent,

v.

James RAY, Appellant.

No. ED 98603.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 3, 2013.

Lisa M. Stroup, MO. Public Defender Office, St. Louis, MO, for appellant.

Gregory L. Barnes, Jefferson City, MO, for respondent.

Before MARY K. HOFF, P.J., KURT S. ODENWALD, J. and ANGELA T. QUIGLESS, J.

ANGELA T. QUIGLESS, Judge.

## I. INTRODUCTION

■ Defendant James Ray ("Ray") appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after the trial court found him guilty of one count of first-degree statutory rape in violation of Section 566.032, RSMo, two counts of first-degree statutory sodomy in violation of Section 566.062, RSMo, and one count of incest in violation of Section 568.020, RSMo.[1] Ray contends that the

---

1. All statutory references are to RSMo 2000 as supplemented, unless otherwise indicated.

The crimes for which Ray was convicted oc-

trial court erred in: (1) finding him guilty of, and sentencing him on both counts of statutory sodomy because the evidence was insufficient to support his convictions; and (2) admitting the testimony of Dr. Julie McManemy.[2] We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Viewed in a light most favorable to the verdict, the evidence adduced at trial showed the following: Ray is the biological father of J.J. ("Victim"), who was born on January 22, 2002, while Ray was in prison. After Ray was released from prison in January of 2009, Victim's mother began dropping her off for visits with her father. At all relevant times to these visits, Ray was living in the basement of his sister's home. On May 17, 2010, Victim told her mother that when she was at her father's house, he would get on top of her, and pull her pants down, and "rock."[3] She also told her mother that Ray would put something "in her stuff," and take her panties off and "lick on her sometimes."

Victim's mother then called an ambulance, and Victim was taken to St. Louis Children's Hospital, where she was interviewed by Kelly Patten ("Patten"), a pediatric medical social worker. Victim told Patten that when she went to her father's house, she slept in his bed, and he laid on top of her and rocked. Victim indicated to Patten that her father touched her vagina with his penis, which Victim called his "weenie." Victim also told Patten that Ray's weenie touched her "booty." Victim indicated that her clothing would be off, or pulled down to her ankle during these encounters. Victim stated to Patten that her father's mouth touched both her mouth and her vagina, by licking it. When asked how often these acts occurred, Victim responded "every time." She also told Patten that these acts were uncomfortable and hurtful.

Following the interview with Patten, Dr. Julie McManemy performed a physical examination on Victim. Dr. McManemy found that Victim had a thin crescentic hymen, as well as notches on her hymen. Dr. McManemy did not deem this abnormal, as either condition could be present in a normal physical finding. Furthermore, Dr. McManemy's examination of Victim's anus was normal. Victim was treated with Septra, for a suspected urinary tract infection, although the culture came back negative forty-eight hours later.

After Dr. McManemy's examination, investigative detectives arranged for Victim

curred between January 1, 2009, and May 1, 2010.

2. Ray also maintains, in a footnote to his opening jurisdictional statement, that, although the judgment form lists him as a prior offender, he was not properly classified as such, because 1) the State never presented evidence of a prior conviction, and 2) the trial court did not make a finding that Ray was a prior offender. The State disputes Appellant's contention, noting that there was ample evidence of a prior conviction, including testimony that Ray spent the first seven years of victim's life in prison. Furthermore, the State correctly argues that Ray has waived his right to appeal on this ground as he does not argue, in any *point* relied on, that the trial court erred in this respect. *See State v. Adams*, 808 S.W.2d 925, 930 (Mo.App.S.D. 1991) (stating that a claim of error not set forth in a point relied on preserves nothing for appellate review).

3. There is some confusion as to the precise date Victim informed her mother of the alleged abuse. Although the State's Sentencing Memorandum refers to this date as May 17, *2009*, the State's brief and testimony from Victim's mother both note the event as occurring in *2010*. Additionally, Victim's mother testified that it occurred on May 16, 2010, as opposed to May 17, 2010. It appears that the sentencing memo is in error, and other testimony indicates that Victim went to the hospital on the May 17, 2010.

to be interviewed by Beverly Tucker ("Tucker"), a forensic interviewer at Children's Advocacy Center. Tucker indicated that she had done over 1900 such interviews with children. She interviewed Victim on May 27, 2010. At the interview, Victim disclosed that she slept in the basement bedroom with her father, where he would get on top of her, or have her pull her pajama bottoms down, and rock. Victim told Tucker that her father put his weenie "inside of her private, as well as inside of her booty on the inside and then rocked." Victim also disclosed that Ray put his mouth on her private part. When Tucker erroneously asked Victim about her father putting his private in Victim's mouth, Victim corrected her, and used dolls to illustrate that her father put *his* mouth on *her* private.

The State charged Ray with one count of statutory rape, two counts of statutory sodomy in the first-degree, and one count of incest. The trial court conducted a bench trial. The State presented the testimony of Victim, Patten, Victim's mother, Tucker, Dr. McManemy, and Detective Julie Johnson. At trial, Dr. McManemy explained, on direct examination, that research has proven that, up to ninety-five to ninety-eight percent of the time, there are no physical findings in prepubertal children, such as Victim, seventy-two hours after the alleged sexual abuse. In further testimony during *cross examination,* Dr. McManemy confirmed that she diagnosed Victim as having been sexually abused. Defense counsel further questioned Dr. McManemy regarding her basis for this diagnosis, and she explained that, in forming a diagnosis, she uses a combination of the history provided by the patient and physical findings. Dr. McManemy agreed that, in this instance, Victim's history was based on information she received from Patten.

The trial court found Ray guilty on all counts, entered a judgment of conviction, and sentenced Ray to concurrent terms of twenty-five years' imprisonment for each statutory rape and statutory sodomy offense, and four years' imprisonment for the incest offense, for a total sentence of twenty-five years. Ray appeals.

## III. DISCUSSION

### A. Sufficiency of the Evidence

In his first two points, Ray argues that his right to due process was violated as the evidence was insufficient to establish beyond a reasonable doubt that Ray committed deviate sexual intercourse.[4] In reviewing the sufficiency of the evidence in a court-tried criminal case, the appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact reasonably could have found the defendant guilty. *State v. Liberty,* 370 S.W.3d 537, 542 (Mo. banc 2012) (internal citations and quotations omitted). This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 542–543. In applying this standard, the reviewing court must consider the record in the light most favorable to the verdict, taking as true the evidence and all logical inferences that support a finding of guilt and ignoring the evidence and inferences that do not sup-

---

4. Ray does not challenge the sufficiency of the evidence related to his first-degree statutory rape or incest convictions.

port a finding of guilt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993); *State v. Walters,* 363 S.W.3d 371, 374 (Mo.App. E.D.2012); *State v. Tolen,* 295 S.W.3d 883, 886 (Mo.App.E.D.2009).

### 1. Count II—First Degree Statutory Sodomy

■ In his first point on appeal, Ray maintains that the trial court erred in finding him guilty of first-degree statutory sodomy in Count II because the evidence was insufficient to establish that he had deviate sexual intercourse with Victim. Specifically, Ray argues that although the State presented evidence that his penis "had touched [Victim's] buttocks, had gone inside them, and between them," the State failed to present sufficient evidence that Ray specifically touched Victim's anus with his penis. The State counters that the evidence established that on multiple occasions, Ray instructed Victim to lie on her stomach with her panties pulled down, placed his penis inside her "booty," and "rocked."

"A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Mo.Rev.Stat. § 566.062.1. Deviate sexual intercourse is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus—by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim." Mo.Rev.Stat. § 566.010.1.

■ "Anus" is defined as "the posterior opening of the alimentary canal." *Tolen,* 295 S.W.3d at 887 (citing *State v. Hahn,* 35 S.W.3d 393, 395 (Mo.App.E.D.2000)).

"Butt" is defined as "buttocks." *Id.* (citing *Hahn,* 35 S.W.3d at 395). "A 'buttock' is defined as 'either of the rounded parts at the back of the hips; either half of the rump.'" *Id.* (citing *Hahn,* 35 S.W.3d at 395). The term, "booty," is a slang term referring to the "buttocks." *Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/booty* (last visited Aug 15, 2013). "Evidence that a defendant touched a victim's 'butt' or 'buttocks' is insufficient to show the defendant touched the victim's 'anus.'" *Tolen,* 295 S.W.3d at 887 (citing *Hahn,* 35 S.W.3d at 395).

However, "Missouri courts have held that a jury could infer contact with the victim's 'anus' from testimony that the defendant touched the victim's 'butt,' 'behind,' or 'bottom,' when specific evidence supports such an inference." *Id. See State v. O'Neal,* 651 S.W.2d 634, 637 (Mo.App. S.D.1983) (sufficient evidence to infer defendant had contact with the victim's "anus" where there was evidence that victims "almost yelled" and "tried not to cry" because "it hurt '[p]retty bad,'" when defendant touched their "bottoms"). Additionally, young children lack "the technical knowledge to accurately describe parts of their bodies." *O'Neal,* 651 S.W.2d at 637. The fact that children, "in their testimony, [use] unsophisticated language different from that of the statute to describe that part of their bodies" does not preclude an inference of contact. *Id.*

Although Victim, who was eight years old when she was taken to Children's Hospital, and ten years old when she testified, never specifically stated that Ray's penis touched her *anus,* there was sufficient testimonial evidence at trial to support such an inference. At trial, Victim testified that sometimes she slept in the basement of her aunt's home with her father, and he would get on top of her and "rock." She further testified that sometimes her

clothes would be on, and sometimes they would be off, and that her father's "weenie" would be touching her body. The prosecutor had the following colloquy with Victim:

Q. And his weenie was touching what part of your body?

A. My butt.

Q. Your butt? And you know, on humans, the butts have like, you know, the two butt cheeks. When he would be touching his weenie on your butt, where would it be on your butt?

A. Inside.

Q. Inside? So it would go between the two cheeks?

A. Yes.

When questioned whether Ray put his weenie in her butt more than one time, Victim answered "yes."

Further, Patten testified at trial that Victim told her that, when Victim's clothes were pulled off or down to her ankles, her father's weenie touched her "booty," pointing to her backside. Additionally, Tucker stated at trial that Victim disclosed to her the following:

She talked about being—visiting her father in the home of her auntie ... and sleeping in the basement bedroom with her father where he would get on top of her or have her pull her pajamas, her bottoms down, get on top of her, and she described it as rocking. And she later indicated that by that she meant that he put his, what she called his weenie, inside of her private, as well as *inside of her booty on the inside* and then rocked.

Tucker also testified that victim demonstrated her position during these encounters by laying a doll, and then herself, *facedown*.

Thus, Victim testified that her father put his weenie *on the inside of her butt, between her cheeks*. Tucker recounted that Victim stated her father put his weenie on the *inside of her booty on the inside* and then rocked. Given the Victim's age and vocabulary, this testimony constitutes sufficient, specific evidence from which a trier of fact reasonably could have determined that Defendant had deviate sexual intercourse with Victim. As such, Ray's initial point is denied.

### 2. Count III—First Degree Statutory Sodomy

■ In his second point, Ray contends that the trial court erred in finding him guilty of first-degree statutory sodomy in Count III because the evidence was insufficient to establish that he had deviate sexual intercourse with Victim by touching her vagina with his tongue. Ray bases his challenge to the sufficiency of the evidence supporting Count III on Victim's failure to testify at trial that Ray had touched her vagina with his tongue.[5] The State, however, maintains that the Victim's out-of-court statements, admitted under Mo.Rev. Stat. § 491.075, may be properly credited by the finder of fact and amply support the verdict. We agree.

■ Out-of-court statements by a child under the age of twelve, admitted under the provisions of section 491.075, are considered substantive evidence of the truth of the matter asserted. Mo.Rev.Stat. § 491.075.1. Such statements, and any reasonable inferences that may be drawn from those statements, "may alone constitute substantial evidence of an element of the offense charged." *State v. Benwire*, 98 S.W.3d 618, 623 (Mo.App.W.D.2003) (citing

---

5. At trial, Victim stated that her father touched her "coo-coo" with his weenie more than one time. When asked if she remembered her father touching her "coo-coo" with "any other part of his body," she responded, "no."

*State v. Goad,* 926 S.W.2d 152, 156 (Mo. App.E.D.1996)).

Here, the trial court admitted the testimony of Patten, Tucker, and Victim's mother recounting Victim's out-of-court statements, pursuant to section 491.075.1. Patten testified at trial that Victim told her that her father's mouth touched her private part, and then pointed to her vagina. According to Patten, when she further asked Victim what he did with his mouth, Victim answered that Ray put "his mouth on her private part, and ... he licked it." Victim's mother also testified that Victim told her Ray "would take her panties off, and he would lick on her sometimes." Witness Tucker, stated that Victim told her Ray put his mouth on Victim's private. Additionally, Tucker recounted that, when she erroneously asked Victim about Ray putting his private in Victim's mouth, Victim corrected her by demonstrating with dolls that it was Ray who actually put *his* mouth on *her* private. Given this testimony, the failure of Victim to testify during trial that her father touched her vagina with his mouth, does not prevent a trier of fact from finding that the element of the crime was established beyond a reasonable doubt.

■ Furthermore, we note that Ray does not cite to *any* authority for his proposition that Victim's failure to testify to the alleged act renders the remaining testimonial evidence insufficient. " 'We are not required to review ... arguments when they appear without citation of applicable authority.' " *State v. Paulson,* 220 S.W.3d 828, 834 n. 7 (Mo.App.S.D.2007) (citing *State v. Thompson,* 147 S.W.3d 150, 163 (Mo.App.S.D.2004)). " 'When no authority is cited and no explanation is otherwise given for its absence, a point relied on is deemed waived or abandoned.' " *Id.* (citing

*Thompson,* 147 S.W.3d at 163). Therefore, Ray's second point is denied.

**B. Admission of Dr. McManemy's Testimony**

In his third point, Ray argues that the trial court erred in admitting Dr. McManemy's testimony that Victim had been sexually abused. Ray contends that permitting Dr. McManemy's testimony regarding her diagnosis of sexual abuse deprived him of a fair trial, because it invested "scientific cachet" on the issue of Victim's credibility, bolstering it, and prejudicing Ray. Ray points to the portion of Dr. McManemy's testimony in which she agreed with his counsel that her diagnosis was that Victim had been sexually abused. Ray equates this with "telling the jurors she thought the [Victim] was believable." The State argues that Ray waived his claim of improper bolstering because Ray himself elicited testimony concerning Dr. McManemy's diagnosis.

As an initial matter, Ray maintains that this issue was properly preserved for appeal. Upon review of the record, Ray filed a pre-trial motion to exclude Dr. McManemy's testimony, and made a continuing objection to the testimony at trial. Although permitting the continuing objection, the trial judge overruled it and allowed Dr. McManemy to testify. Ray did not file a motion for a new trial. *See* Rule 29.11(e) ("For appellate review of cases tried without a jury a motion for new trial is not necessary to preserve any matter for appellate review.").

■ At trial, the direct examination of Dr. McManemy touched on several topics, including the procedure for conducting a sexual assault exam in the pediatric emergency room at Children's Hospital, the frequent lack of physical evidence of abuse

in prepubertal children,[6] and the results of Dr. McManemy's physical examination of Victim. Notably, the State refrained from eliciting any testimony regarding Dr. McManemy's diagnosis as to whether Victim had been sexually abused. Nor did Dr. McManemy make any statement on direct examination, opining as to Victim's credibility. On *cross examination*, however, defense counsel asked Dr. McManemy, "So you did eventually make a—I'm going to put my quotes up, a diagnosis of child sexual abuse, correct?" Dr. McManemy agreed. Defense counsel then inquired as to the extent of her reliance on Victim's narrative to Patten, in light of the lack of physical findings of abuse.

Therefore, the State did not ask Dr. McManemy about her diagnosis on direct examination; the alleged bolstering pertaining to Victim's credibility was elicited solely by *Ray* on *cross-examination*. Ray may not now complain about testimony and evidence he elicited. A defendant may not "complain about matters he himself brings into the case." *State v. Baumruk*, 280 S.W.3d 600, 612 (Mo. banc 2009) (citing *State v. Crenshaw*, 59 S.W.3d 45, 50 (Mo.App.E.D.2001)). *See also State v. Fassero*, 256 S.W.3d 109, 118 (Mo. banc 2008) (holding that a defendant may not complain about testimony that was invited by his own questions).

Ray also asks the Court to review this claim for plain error under Rule 30.20. Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *See State v. Gaines*, 342 S.W.3d 390, 398 (Mo. App.W.D.2011). Claims of plain error are reviewed "under a two-prong standard."

*State v. Roper*, 136 S.W.3d 891, 900 (Mo. App.W.D.2004) (citation omitted). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.W.D.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* (citing *State v. Williams*, 9 S.W.3d 3, 12 (Mo.App. W.D.1999)). "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* (citing *Williams*, 9 S.W.3d at 12). "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.* (citing *Williams*, 9 S.W.3d at 12).

Ray asserts that the trial court plainly erred in allowing Dr. McManemy's testimony. "It is well-established law that 'expert testimony is admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence.'" *State v. Haslett*, 283 S.W.3d 769, 779 (Mo.App.S.D. 2009) (quoting *State v. Faulkner*, 103 S.W.3d 346, 360–61 (Mo.App.S.D.2003)). Furthermore, in "a criminal case, an expert may testify concerning his or her opinion on an ultimate issue, but the testimony must aid the jury and not invade the jury's province." *Id. See State v. Pickens*, 332 S.W.3d 303, 321–22 (Mo.App.E.D. 2011). While an expert witness should not be permitted to comment on the veracity

---

6. Dr. McManemy stated that, ninety-nine percent of the time, there is no evidence of injury on physical exam in a prepubertal child seventy-two hours after a sexual assault. She further testified that various research suggests that ninety-five to ninety-nine percent of the time, there are no physical findings.

of another witness, an expert is permitted to testify as to his or her opinion on an ultimate issue in a criminal case as long the opinion does not state that the defendant is guilty of the crime. *Haslett*, 283 S.W.3d at 779 (citation omitted).

In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized. *State v. Churchill*, 98 S.W.3d 536, 539 (Mo. banc 2003). General testimony describes a "generalization" of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. *Id.* Particularized testimony is testimony concerning a specific victim's credibility as to whether she has been abused. *Id.* (citing *State v. Williams*, 858 S.W.2d 796, 798–99 (Mo.App.E.D.1993)). The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it must be rejected because it usurps the decision-making function of the trier of fact and, therefore, is inadmissible. *Williams*, 858 S.W.2d at 799.

Here, Dr. McManemy's testimony is generalized testimony rather than particularized testimony. Dr. McManemy's testimony that there are often no physical findings of abuse in prepubertal children seventy-two hours after the acts allegedly occurred, describes a characteristic commonly observed in abused children. Furthermore, Dr. McManemy does not state that Ray is guilty of the crime, nor does she comment on Victim's credibility. *See State v. Fewell*, 198 S.W.3d 691, 697–98 (Mo.App.S.D.2006) (holding there was no impermissible comment on victim's credibility where the expert witness "answered affirmatively when asked, 'But, it's your opinion that Victim was sexually abused as she reported to you, right?'"); *State v.*

*Wadlow*, 370 S.W.3d 315, 322 (Mo.App.S.D. 2012) (concluding that trial court did not plainly err in admitting expert witness's testimony where the expert never testified that defendant was guilty of offense charged but merely that it was her opinion that victim had been sexually abused, and testimony did not vouch for victim's credibility). *But see State v. Foster*, 244 S.W.3d 800, 803–804 (Mo.App.S.D.2008) (Sexual abuse expert's opinion that despite lack of physical evidence, child's allegation of sexual abuse was "very credible" constituted improper bolstering).

Ray relies on *State v. Churchill* to establish that Dr. McManemy's testimony constitutes improper bolstering. His argument is misplaced. In *Churchill*, the examining physician's testimony that the alleged sexual abuse described by the victim was "real," was deemed an inadmissible opinion on the victim's credibility. 98 S.W.3d at 539. Here, although Dr. McManemy conceded that she diagnosed sexual abuse, she later clarified her reliance on *Patten's account* in making the diagnosis. Notably, she did not offer an opinion as to the believability or credibility of Victim herself.

We, therefore, do not find "'evident, obvious, and clear'" error. *Roper*, 136 S.W.3d at 900 (quoting *Scurlock*, 998 S.W.2d at 586). Without a finding of plain error we need not reach an analysis of whether the alleged error resulted in a manifest injustice or a miscarriage of justice. Additionally, in a court-tried case, we presume that any inadmissible or improper evidence was not prejudicial; unless it is apparent the decision was based on that evidence. *See State v. Gillespie*, 944 S.W.2d 268, 272 (Mo.App.E.D.1997); *State v. Leigh*, 580 S.W.2d 536, 545 (Mo.App. E.D.1979). Point III is denied.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J., concur.