

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,            )       *Opinion issued June 14, 2022*
                                            )

                    Respondent,      )

                                            )

v.                                     )       No. SC99469

                                            )

DAVIUNE C. MINOR,          )

                                            )

                    Appellant.       )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Patrick W. Campbell, Judge

Following a jury trial, Daviune C. Minor (hereinafter, "Defendant") was found guilty of three counts of first-degree statutory sodomy and three counts of incest. The circuit court sentenced him to a total of eighty-seven years' imprisonment.

Defendant claims the circuit court erred in admitting evidence pursuant to article I, section 18(c) of the Missouri Constitution, overruling objections to the state's closing argument, admitting expert testimony, admitting two exhibits, and finding sufficient evidence to support one count of statutory sodomy and one count of incest. This Court finds no error. The circuit court's judgment is affirmed.[1]

---

[1] This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

**Factual and Procedural Background**

Child was born in June 2006. In August 2013, Child lived in her paternal grandmother's home with Defendant, her mother (hereinafter, "Mother"), siblings, and grandmother. Child was seven years old. Defendant is Child's biological father.

Child shared a bedroom with her parents and siblings. One night, Child fell asleep while watching television in the bed. Child awoke in the bed with Defendant's fingers touching her vagina. Later that night, Child awoke on the floor with Defendant attempting to "stick [his penis] in [her] vagina" and "stick [his penis] in [her] butt." Child also testified Defendant touched his penis to her mouth.

In March 2014, Child's school presented information to her class about the differences between "good touches" and "bad touches." Following this presentation, Child revealed to her teacher she received a "bad touch." Child's teacher reported this information to the school counselor, who made a child abuse hotline call. An investigator from the Children's Division went to the school and met with Child and her siblings. After meeting with the children, the investigator referred Child to the Child Protection Center ("CPC") for a forensic interview. Mother testified Child disclosed to her later that day that Defendant touched her inappropriately and threatened to kill Child if she said anything.

Child's younger brother later informed Mother he saw Defendant touching Child's vagina. He noticed Child was crying and Defendant was covering her mouth with his hand.

Child began participating in individual therapy. In the meantime, Mother became aware of allegations Defendant sexually abused another girl. Mother and Child's therapist agreed it could be beneficial for Child to know she was not the only victim of Defendant's sexual abuse.

At trial and pursuant to article I, section 18(c), the state introduced propensity evidence, detailing acts for which Defendant was not on trial but had the purpose of demonstrating he had a propensity to commit the acts charged against Child. The state introduced evidence surrounding Defendant's alleged abuse of two other minor females, L.W. and D.J.

The jury found Defendant guilty of three counts of first-degree statutory sodomy and three counts of incest. Defendant appeals. To avoid repetition, additional facts will be set forth in the analysis of Defendant's points on appeal.

## Point One:  Propensity Evidence

Defendant asserts the circuit court abused its discretion in admitting evidence pursuant to article I, section 18(c), demonstrating he had deviate sexual intercourse with L.W. and D.J. Defendant challenges the admission of three witnesses' testimony and five exhibits. Defendant also challenges the use of this evidence in the state's closing argument. Defendant believes this evidence was more prejudicial than probative, resulting in reversible error.

*Rule 84.04*

This Court independently examines the propriety of Defendant's first point on appeal. The briefing requirements set forth in Rule 84.04 are mandatory. *Fowler v. Mo.*

3

*Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021). Any appellant who does not comply with Rule 84.04's mandates for a point relied on fails to preserve the argument for this Court's review. *Id*.

"Rule 84.04 is not merely an exhortation from a judicial catechism nor is it a suggestion of legal etiquette." *Shockley v. State*, 579 S.W.3d 881, 917 n.9 (Mo. banc 2019). "The function of [points relied on] is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (alteration in original) (quoting *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)). "Deficient briefing runs the risk of forcing this Court to assume the role of advocate by requiring [the Court] to sift through the legal record, reconstruct the statement of facts, and craft a legal argument on the appellant's behalf." *Murphree v. Lakeshore Ests., LLC*, 636 S.W.3d 622, 624 (Mo. App. E.D. 2021). These actions waste judicial resources and "create[] the danger that appellate courts interpret the appellant's arguments differently than the appellant intended or the opponent understood." *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017).

To guarantee advocates are able to comply with these standards, Rule 84.04(d)(1) sets forth not only clear dictates on how to comply with its requirements, but it also sets forth an easy to understand, fill-in-the-blank template for drafting a proper point relied on. Rule 84.01(d)(1) requires each point on appeal to identify a claim of reversible error, state the legal reason for that claim concisely, and summarily explain why the stated legal

reasons support the claim of reversible error. Keeping these requirements in mind, Defendant's point relied on states:

> The [circuit] court abused its discretion in overruling [Defendant's] objections and allowing evidence under Mo. Const. Art. I, section 18(c) that [Defendant] had deviate sexual intercourse (a) as an adult with L.W. in the spring of 2012, and (b) as a juvenile with D.J. in September 2000. The evidence, presented through the testimony of L.W., M.W., and T.F., and State Exhibits 1, 2, 3, 15 and 16, was substantially more prejudicial than probative, violating [Defendant's] right to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 22(a) of the Missouri Constitution and was inadmissible under Art. I, [section] 18(c), in that (a) as to L.W., the testimony had little probative value, the testimony was lengthy, detailed, not impassionate, and graphic, and the jury was left to speculate that [Defendant] was not punished for the alleged crime; (b) as to D.J., the 2000 act was remote in time and not sufficiently similar to the charged crime to show a current propensity to commit the charged crime; and (c) the [s]tate repeatedly used the evidence in closing for an improper purpose, to argue that [Defendant] was a sex predator and a serial child sodomizer who preyed on his victims and had a reign of terror in the jurors' community since 2000.

Defendant's point on appeal fails to comply with the clear standards set forth in Rule 84.04. "Rule 84.04(d) prohibits a point relied on that groups together multiple contentions not related to a single issue and such a point is subject to dismissal." *State v. S.F.*, 483 S.W.3d 388, 389 n.5 (Mo. banc 2016). Defendant's single point on appeal challenges the circuit court's admission of the testimony of three witness and five exhibits. Further, the point on appeal claims not only was the admission of this plethora of evidence improper, it also asserts the state erroneously used the evidence in its closing argument.[2] "This Court recognizes there is a tension between being a[] zealous advocate

_____

[2] While Defendant's point relied on claims the state repeatedly used improper evidence in its closing, he fails to develop this contention in the argument portion of his brief. "Arguments raised in the points relied on portion of an appellate brief that are not

for one's client" and culling through the record to present potential reversible errors. *State v. McFadden*, 369 S.W.3d 727, 745 n.3 (Mo. banc 2012). Yet, a client's best interests are not served by including every potential error in one point on appeal.

The appellate courts' continued reiteration of the importance of the briefing rules without enforcing any consequence "implicitly condones continued violations and undermines the mandatory nature of the rules." *Alpert v. State*, 543 S.W.3d 589, 601 (Mo. banc 2018) (Fischer, J., dissenting). The appellate courts may exercise their discretion, *ex gratia*, to address what they believe are the merits of a case. However, to be clear, this Rule 84.04 violation is more than a technical violation.

*Preservation of Error*

The parties dispute whether Defendant's objections to the state's propensity evidence and closing argument comments are preserved. This Court must resolve whether Defendant's multifarious claims have been preserved for appeal to determine the appropriate standard of review to apply. Defendant claims all of his objections regarding the admissibility of the state's propensity evidence were preserved for appeal.

First, Defendant asserts he raised this issue in a pretrial propensity hearing on January 2, 2018. Defendant also asserts these issues were raised in pretrial documents submitted to the circuit court. Pretrial orders regarding the admissibility of evidence are "interlocutory, unreviewable, and subject to change." *State ex rel. Tipler v. Gardner*, 506

---

supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review." *State v. Nunley*, 341 S.W.3d 611, 623 (Mo. banc 2011).

6

S.W.3d 922, 928 (Mo. banc 2017); *see also State v. Blurton*, 484 S.W.3d 758, 775 (Mo. banc 2016). Because a pretrial ruling is interlocutory, evidence "produced at trial may prompt the [circuit] court to alter its pretrial ruling …." *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). Merely objecting to the admission of evidence in a pretrial motion is insufficient to preserve any trial error for appeal. *State v. Hughes*, 563 S.W.3d 119, 124 (Mo. banc 2018).

To preserve a pretrial objection, a "party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection." *Wilson v. City of Kan. City*, 598 S.W.3d 888, 894 (Mo. banc 2020). Only an objection made timely *at trial* will preserve an issue for appeal. *Tipler*, 506 S.W.3d at 924; *State v. Schuster*, 92 S.W.3d 816, 822 (Mo. App. S.D. 2003).

Second, Defendant states he was granted a continuing objection "before *voir dire*." Further, Defendant states his counsel noted the objection before L.W. testified and objected to the state's exhibits 1 and 2. At trial, the "objection 'must be specific and made contemporaneously with the purported error.'" *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (quoting *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015)). A claim of constitutional error must be raised at the first opportunity and with citation to specific constitutional objections. *Driskill*, 459 S.W.3d at 426 . "For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial and presented to the [circuit] court in a motion for new trial."

*State v. Loper*, 609 S.W.3d 725, 732 (Mo. banc 2020) (emphasis omitted) (quoting *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016)).[3]

Finally, Defendant states he also included these claims of error in his motion for new trial. In Defendant's new trial motion, he asserts there were errors committed, entitling him to a new trial. Defendant separated these errors under three subheadings: "Error in Pretrial Litigation;" "Errors committed in trial;" and "ERRORS IN CLOSING ARGUMENT." In the pretrial litigation section, Defendant asserted he was prejudiced by the introduction of propensity evidence pursuant to article I, section 18(c) "in the form of the introduction of evidence pertaining to a severed count regarding L.W. and the introduction of a juvenile admission for statutory sodomy." Defendant did not raise the issue of the admission of any propensity evidence as an error that was committed at trial.

---

[3] Defendant cites *State v. Gates*, 635 S.W.3d 854, 857 n.4 (Mo. banc 2021), asserting that this Court should not apply preservation standards in an unreasonably technical manner. In *Gates*, the defendant was prevented from explaining to the jury the reasons he shot the victim. *Id*. at 860. The specificity the Court referred to was not that the defendant failed to object at trial; rather, it was that the defendant's explanation of his objection was not specific enough. *Id*. at 857 n.4. This Court reviewed the defendant's claims because it was clear the circuit court understood his argument as the circuit "court complained it had 'ruled 33 times' on the issue and it was 'the 13th time' [the defendant's] counsel had requested clarification." *Id*. Further, it is clear from the opinion there were objections and discussions held between counsel and the circuit court during the trial. *Id*. at 858-59. *Gates* does not stand for the proposition that a party does not need to make an objection at trial or that a party does not need to follow the standards to preserve an issue for appeal. This Court will not condone a party's failure to follow basic standards of error preservation.

*Witness Testimony*

Defendant asserts the testimony of L.W., M.W., and T.F.[4] was inadmissible. Defendant's arguments regarding the admissibility of these witnesses' testimony are not preserved. While Defendant made references to objecting to propensity evidence pretrial, he fails to point this Court to any specific objection he made regarding these witnesses. During those pretrial proceedings, the circuit court specifically stated it entered "orders as a preliminary matter" and it "doesn't prevent the defense from objecting." Defendant never objected to the admission of their testimony *at trial*. Further, Defendant's motion for new trial asserts only a *pretrial* error by the circuit court in making a preliminary decision to allow the introduction of evidence relating to L.W.'s abuse. There was no specific objection mentioning either M.W. or T.F.'s testimony. Defendant's references to his pretrial objections are not preserved for appeal. *Hughes*, 563 S.W.3d at 124.

*State Exhibits 3, 15, and 16*

Defendant asserts the circuit court erred in admitting state's exhibits 3, 15, and 16. Defendant's arguments regarding these exhibits are not preserved. Defendant objected to the admission of exhibit 3 at trial as he believed it was an inadmissible demonstrative exhibit. Defendant never objected to the admission of exhibit 15 and 16 *at trial*. Further, while Defendant's motion for new trial references several exhibits, he did not include these exhibits in the motion. Defendant's failure to include these exhibits in his motion for new trial renders these arguments unpreserved. *Loper*, 609 S.W.3d at 732.

---

[4] M.W. is L.W.'s brother, and T.F. is her mother.

9

*State Exhibits 1 and 2*

Defendant cites two instances wherein he raised his continuing objection *at trial* and both of these objections focused on exhibits 1 and 2.  First, prior to L.W.'s testimony, Defendant raised an objection to exhibits 1 and 2, but noted his objection was not in regard to the propensity issue.  Rather, Defendant sought to have those exhibits redacted.  The circuit court sustained this objection and ordered the exhibits to be redacted.

Second, Defendant objected to the introduction of exhibits 1 and 2.  Defense counsel stated:

> I'm just renewing my objection to the propensity evidence.  I think you've already given me a continuing objection.  I always worry about this stuff with the Court of Appeals if there's a conviction.  So we would object to this evidence based on the propensity hearing, arguments made in the propensity hearing.  And I will say for the record that they did redact out the portions that I asked them to do and I have reviewed those documents.

Defendant made a timely objection to the introduction of exhibits 1 and 2 at trial.  Defendant, however, did not refer to the specific constitutional provision he now argues was violated by their admission.

Further, Defendant states he preserved his objections by including them in his motion for new trial.  Defendant's motion for new trial asserts only a *pretrial* error by the circuit court in making a preliminary decision to allow the introduction of these exhibits.[5]  Here, this minimum amount of competency was enough to garner plain error review.

---

[5] Defendant did not specifically reference "exhibits 1 and 2" in the motion for new trial; rather, Defendant stated he objected to the exhibits' contents.

*Plain Error Review*

"Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim--no matter if it is statutory, constitutional, structural, or of some other origin--is evaluated by this Court's plain error framework without exception." *State v. Brandolese*, 601 S.W.3d 519, 530 (Mo. banc 2020) (emphasis omitted). "Plain error review is discretionary." *Loper*, 609 S.W.3d at 733 (quoting *State v. Michaud*, 600 S.W.3d 757, 762 (Mo. banc 2019)).

> Plain error review is a two-step process:
>
> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Grado v. State*, 559 S.W.3d 888, 899-900 (Mo. banc 2018) (quoting *State v. Baumruk*, 280 S.W.3d 600, 607-08 (Mo. banc 2009)). "To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show 'the error was outcome determinative.'" *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

Here, Defendant cannot establish manifest injustice or a miscarriage of justice resulted from the admission of the witnesses' testimony and the exhibits. The jury found Defendant committed the offenses against Child beyond a reasonable doubt. The state and defense counsel repeatedly reminded the jury Defendant was only on trial for his actions against Child—not any of his actions against any other person. Further, the

11

circuit court specifically instructed the jury that Defendant was on trial only for the offenses against Child. The jury was admonished that it "may not find [Defendant] guilty only because [it] believe[s] he may have been involved in or committed other offenses or bad acts in the past." A jury is presumed to follow the circuit court's instructions. *Brandolese*, 601 S.W.3d at 527 n.7; *State v. Naylor*, 510 S.W.3d 855, 863 (Mo. banc 2017); *see also State v. Banks*, 582 S.W.3d 919, 926 (Mo. App. E.D. 2019) (finding a jury is presumed to follow the circuit court's instructions when considering the prejudice of propensity evidence in a child molestation case pursuant to article I, section 18(c)). This point is denied.

## Point Two:  Closing Argument

Defendant claims the circuit court abused its discretion in overruling his continuing objection to the state's closing argument. Defendant believes the state's argument was an impermissible ad hominem attack not supported by the record. Defendant asserts the state's argument intended to secure a conviction based on character as a "bad man" rather than on his guilt of the charged crimes.

A circuit court's rulings during closing arguments are reviewed for an abuse of discretion. *State v. Rice*, 573 S.W.3d 53, 75 (Mo. banc 2019). "This Court will find an abuse of discretion if the circuit court's ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id*. "An abuse of discretion occurs when a defendant is prejudiced such that 'there is a reasonable probability that the outcome at trial would have been different if the error had not been committed.'" *State v. Holmsley*, 554 S.W.3d 406, 410 (Mo. banc 2018)

12

(quoting *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010)). The state is granted wide latitude in closing arguments, provided its closing argument does not go beyond the evidence presented at trial. *Id*. "Closing arguments must be examined in the context of the entire record." *Deck*, 303 S.W.3d at 540.

"A prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). The state may not make "ad hominem attacks designed to inflame the jury." *Walter*, 479 S.W.3d at 125. "While [the state] goes too far when [it] strays beyond the evidence or makes ad hominem attacks in order to inflame the jury, not every impermissible remark will result in prejudice requiring reversal." *State v. Whitby*, 365 S.W.3d 609, 613 (Mo. App. E.D. 2012) (emphasis omitted) (internal citations omitted).

Defendant identifies three instances wherein he believes the state erroneously made ad hominem attacks against him. The first two were at the beginning of the state's closing argument. The state argued Defendant "is a sexual predator who has been preying on little girls in your community since the year 2000. Let me take you back to when the defendant first started his reign of terror." The state then recounted the first instance of Defendant's sexual acts against D.J. Then, as a means of continuing Defendant's history, it stated, "But [Defendant's] reign of terror didn't just stop in 2001 once he pled guilty as a juvenile to an offense that would have been criminal if he were charged as an adult, because …" there was another sexual encounter with L.W. The final comment occurred during the state's rebuttal closing argument when it referred to

Defendant as "a serial child sodomizer." Defendant believes these were improper characterizations of him based upon the propensity evidence.

When prosecuting a sexual offense against a minor child, article I, section 18(c) allows the admission of prior criminal acts to demonstrate a defendant's propensity to commit the crime for which he or she currently is charged. The state's comments were made within the larger context of Defendant's history as brought to light by the evidence presented at trial. The three brief references to him and his past conduct were fleeting, brief, and isolated comments. The state reminded the jury it was to evaluate Defendant's actions toward Child rather than any other minor in his past. Further, the state's comments were based upon the evidence presented and not merely gratuitous comments meant to inflame the jury. *Cf. State v. Banks*, 215 S.W.3d 118, 121 (Mo. banc 2007) (finding reversible error when the state referred to the defendant as "the devil and the crime scene was hell"). The circuit court did not abuse its discretion is overruling Defendant's objection. This point is denied.

### Point Three: Admission of Expert Testimony

Defendant claims the circuit court abused its discretion in admitting the expert testimony of Brandy Williams (hereinafter, "Williams"), a CPC forensic interviewer. Defendant asserts Williams did not meet the criteria in section 490.065, RSMo Supp. 2017, to be qualified as an expert. Defendant also asserts Williams' testimony was not reliable.

A circuit court has broad discretion to admit or exclude evidence at trial. *Wood*, 580 S.W.3d at 574. "A [circuit] court abuses its discretion only if its decision to admit or

14

exclude evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Blurton*, 484 S.W.3d at 769 (internal quotation omitted). On direct appeal, review is "for prejudice, not mere error." *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005) (internal quotation omitted). "[T]he admission of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error." *State v. Gibbons*, 629 S.W.3d 60, 83 (Mo. App. W.D. 2021) (quoting *State v. Suttles*, 581 S.W.3d 137, 145 (Mo. App. E.D. 2019)).

*Expert Witness Qualification*

Defendant challenges Williams' designation as an expert witness regarding the disclosure process, including delayed disclosure. Defendant relies upon Williams' testimony at a pretrial evidentiary hearing, claiming her formal training was insufficient and one author of the studies she read has been disgraced for unethical and dishonest conduct.

Section 490.065.2(1) allows testimony by an expert witness "who is qualified as an expert by knowledge, skill, experience, training, *or* education …." (Emphasis added). "[A] qualified expert can offer testimony based on sufficient facts and reliable principles that have been reliably applied whenever such testimony will help the jury understand the evidence and decide the disputed issues." *State v. Carpenter*, 605 S.W.3d 355, 360 (Mo. banc 2020).

Williams detailed her education, experience, and training. Williams has a bachelor's degree in psychology and a master's degree in social work. She is licensed in Missouri and Kansas. In her ten years' experience as a forensic interviewer, Williams conducted more than 2,000 forensic interviews. Throughout her career, Williams participated in specialized and on-the-job training, including training regarding delayed disclosures.[6] Williams read peer-reviewed publications regarding forensic interviewing.

Section 490.065.2(1)'s plain language states an expert may be qualified based solely on training or experience. *See Loper*, 609 S.W.3d at 736. Williams' experience qualified her to testify as an expert regarding the disclosure process, including delayed disclosure. Williams' specialized knowledge would assist the jury to understand the evidence presented. Section 490.065.2(1)(a). Williams was qualified to testify as an expert witness.

*Reliable Testimony*

Defendant asserts that, even if Williams had sufficient qualifications to be designated an expert, her testimony still was inadmissible. Defendant claims Williams' testimony regarding the process of sexual abuse disclosures by children was not based on

---

[6] Defendant also argued Williams had only scant training regarding delayed disclosures. However, Defendant never questioned Williams regarding the extent of her training at trial. "The extent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony." *State v. Mosley*, 526 S.W.3d 361, 365 (Mo. App. E.D. 2017) (quoting *State v. Partridge*, 122 S.W.3d 606, 609 (Mo. App. E.D. 2003)). Had Defendant wished to challenge the extent of her training, and accordingly, her knowledge base, he should have cross-examined her on this basis to allow the jury to make a more informed determination regarding the weight to give her testimony.

sufficient facts or data, reliable principles, and methods. Hence, he believes the circuit court abused its discretion in allowing her testimony.

"Although the delayed-disclosures theory is not easily subject to peer review and/or publication under the *Daubert*[7] factors, scientists generally accept the theory to explain a common behavior seen in child-victims of sexual abuse." *Suttles*, 581 S.W.3d at 151. When a witness provides non-scientific, generalized testimony, based upon expert specialized knowledge, a different reliability analysis is appropriate. *State v. Marshall*, 596 S.W.3d 156, 161 (Mo. App. W.D. 2020). "As long as an expert's testimony rests upon good grounds, based on what is known[,] it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (alteration in original) (quoting *Suttles*, 581 S.W.3d at 150).

Defendant's assertion that Williams' testimony is not reliable because it was not supported by sufficient facts or data, reliable principles, and methods is not persuasive. Williams testified as to her experience as a forensic interviewer and the number of interviews she conducted over the past ten years. Defendant never questioned Williams at trial about the allegedly faulty literature. While Defendant believed that literature's author had been "disgraced and discredited," this literature was never discussed at trial. Defendant never challenged this literature or explained how Williams' reliance on it impacted her testimony.

---

[7] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993).

Defendant also states Williams' testimony indicating what was normal for sexually abused children was improper. On cross-examination, Williams acknowledged every child does not go through every stage of disclosure and a denial of abuse could be truthful. Defendant does not demonstrate how Williams' testimony about the generalized process of disclosing sexual abuse was so prejudicial that the circuit court should have intervened based upon Defendant's continuing objection "based on the previously filed documents."

While a continuing objection may seem to be an effective tool at trial, there are trade-offs that may impact an appeal. Merely receiving a continuing objection does not shift the onus onto the circuit court to become an advocate for the party who receives the continuing objection. "The [circuit] court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 317-18 (Mo. App. E.D. 2018) (quoting *Daubert*, 509 U.S. at 595). Continuing objections based upon considerable pretrial hearings may not fully convey a party's exact concerns at the time testimony is offered.

Appellate courts repeatedly have found evidence regarding delayed-disclosure evidence is relevant and admissible in child sexual abuse cases. *See Gibbons*, 629 S.W.3d at 82-87; *State v. Woolard*, 604 S.W.3d 913, 920 (Mo. App. S.D. 2020); *Marshall*, 596 S.W.3d at 159-62 ; *Suttles*, 581 S.W.3d at 149 ; *State v. Tillitt*, 552 S.W.3d 571, 580-81 (Mo. App. W.D. 2018); *State v. Walker*, 549 S.W.3d 7, 13-14 (Mo. App.

18

W.D. 2018). "There is nothing *per se* unreliable about testimony based on personal observations made in the course of an expert's professional experiences." *Gardner*, 562 S.W.3d at 321. The circuit court did not abuse its discretion in allowing Williams to provide generalized testimony concerning children's disclosure of sexual abuse based upon her extensive experience and training. This point is denied.

## Point Four: Probative Value of Demonstrative Evidence

Defendant asserts the circuit court erred in admitting exhibits 31 and 32, claiming the prejudicial nature of these exhibits outweighed their probative value. Defendant believes these exhibits could have mislead the jury to believe the drawings depicted the actual events in the case.

A "circuit court 'has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion.'" *Loper*, 609 S.W.3d at 731 (quoting *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016)). "Demonstrative evidence … is admissible if the evidence is both legally and logically relevant." *State v. Brown*, 337 S.W.3d 12, 15 (Mo. banc 2011). "Logical relevance refers to the tendency 'to make the existence of a material fact more or less probable.' Legal relevance refers to the assessment of probative value relative to the risk of 'unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.'" *Id*. (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). In evaluating the relevance of the demonstrative evidence, the circuit court needs to ensure "the evidence fairly represents what is being demonstrated and that it is

19

not inflammatory, deceptive[,] or misleading." *State v. Salmon*, 563 S.W.3d 725, 739 (Mo. App. E.D. 2018).

The state offered exhibits 31 and 32 in conjunction with the testimony of Dr. Terra Frazier (hereinafter, "Dr. Frazier"), a child abuse pediatrician. Exhibits 31 and 32 were black-and-white diagrams, which were clinical in nature and textbook-like in appearance. Exhibit 31 depicted a hand and female genitals. Exhibit 32 depicted two ways in which a penis and buttock could be in contact.

Dr. Frazier testified she performed a Sexual Assault Forensic Examination on Child that produced normal findings. Dr. Frazier referred to the exhibits to clarify her explanation regarding the reasons she did not expect to find any physical evidence of Child's trauma. Dr. Frazier testified regarding the anatomy of a prepubescent girl's genitalia and anus. She explained an examination of the hymen generally will not reveal penetration because there should always be an opening to the hymen and it is composed of mucosal tissue, which heals quickly. Similarly, Dr. Frazier explained an examination of the anus generally will not reveal penetration because just past the opening, it also is comprised of mucosal tissue and is designed to stretch to allow things to pass through.

"When for the limited purpose of demonstration, [evidence] may be properly admitted even if is not connected with the defendant or offense charged so long as it is relevant, it is a fair representation of what it is demonstrating, and it is not inflammatory, deceptive, or misleading." *State v. Freeman*, 269 S.W.3d 422, 427 (Mo. banc 2008). Dr. Frazier referred to both exhibits as visual representations to assist in explaining why Child's examination would not reveal any physical manifestation of abuse. Exhibit 31

20

was an accurate diagram demonstrating how a hand could penetrate a vagina. Exhibit 32 was an accurate diagram demonstrating a way a penis could contact or penetrate an anus. Neither exhibit was inflammatory and could be considered "shocking" only in that the exhibits depicted acts of a sexual nature. Further, Defendant cross-examined Dr. Frazier but did not question her regarding these exhibits.

The circuit court did not abuse its discretion in admitting exhibits 31 and 32 into evidence and permitting them to be used as demonstrative evidence. This point is denied.

### Point Five: Sufficiency of the Evidence

Defendant claims the circuit court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to support count V, first-degree statutory sodomy, section 566.062, RSMo Supp. 2006, and count VI, incest, section 568.020, RSMo Supp. 2006. Defendant argues there was insufficient evidence to establish penetration due to the discrepancy between the original indictment language and the information in lieu of indictment the state was granted leave to file but was never filed in the electronic case record. Defendant also asserts the state was required to prove penetration in both instances and failed to do so.

This Court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Knox*, 604 S.W.3d 316, 319 (Mo. banc 2020) (quoting *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014)). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences

21

contrary to the verdict." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (quoting *State v. Wright*, 382 S.W.3d 902, 903 (Mo. banc 2012)).

*Amended Information*

Defendant asserts there was insufficient evidence to establish penetration due to the discrepancy between the original indictment language and the information in lieu of indictment the state was granted leave to file but was never filed in the electronic case record. Defendant claims that, due to the state's failure to file the amended information in the electronic case record, it was bound by the language of the original indictment, which alleged Defendant engaged in deviate sexual intercourse with Child by penetrating her anus with his penis.

During trial, the state requested leave to file an information in lieu of indictment, modifying the language of the charges from penetration to touching. The circuit court allowed the state to amend the information because it did not allege an additional or different offense than the original indictment. Defendant had notice of the circuit court's ruling allowing the state to amend its information. The circuit court also found allowing the amendment would not prejudice Defendant. *See* Rule 23.08 (allowing an amendment at any time prior to the verdict if "(a) [n]o additional or different offense is charged, and (b) [a] defendant's substantial rights are not thereby prejudiced"). During trial, both the state and Defendant proceeded as if the amended information were filed. The jury was instructed based upon the amendment. Defendant did not object to the verdict directors using the language of "touching" rather than "penetration." Further, Defendant submitted converse instructions using the same amended language. Under these facts and

22

circumstances in this case, the state was not bound by the language in the original

indictment.  *See Wilkinson v. State*, 461 S.W.2d 283, 284-85 (Mo. 1970); *State v. Hicks*,

221 S.W.3d 497, 503-04 (Mo. App. W.D. 2007); *State v. Allen*, 756 S.W.2d 167, 170

(Mo. App. W.D. 1987); *State v. Cooper*, 744 S.W.2d 447, 449-50 (Mo. App. W.D. 1987).

*Deviate Sexual Intercourse*

Defendant further posits there was insufficient evidence to establish he engaged in

deviate sexual intercourse with Child.[8]  As defined, "deviate sexual intercourse" does not

require penetration.  *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007).  Yet,

Defendant asserts there was insufficient evidence proving his penis touched Child's anus.

Generally, "[e]vidence that a defendant touched a victim's 'butt' or 'buttocks' is

insufficient to show the defendant touched the victim's 'anus'" because they are separate

body parts.  *State v. Ray*, 407 S.W.3d 162, 167 (Mo. App. E.D. 2013).  Yet, children

often use unsophisticated language when describing body parts because they may lack the

technical language for an accurate description.  *Id*.  Testimony using unsophisticated

language does not preclude an inference of contact.  *Id*.  Courts have allowed an

inference of contact when a child is able to describe specific circumstances indicating

---

[8] At the time of Defendant's acts, "deviate sexual intercourse" was defined as:

> [A]ny act involving the genitals of one person and the hand, mouth, tongue,
> or anus of another person or a sexual act involving the penetration, however
> slight, of the male or female sex organ or the anus by a finger, instrument or
> object done for the purpose of arousing or gratifying the sexual desire of any
> person or for the purpose of terrorizing the victim ….

Section 566.010(1), RSMo Supp. 2006.

23

there was contact with his or her anus. *See State v. Wilson*, 489 S.W.3d 349, 356 (Mo. App. E.D. 2016) (finding sufficient evidence when the child testified the defendant "tried to put his penis in [my] butt"); *Ray*, 407 S.W.3d at 166 (finding sufficient evidence when child testified defendant put his penis on the "inside of her booty on the inside and then rocked"); *State v. Copeland*, 95 S.W.3d 196, 199-200 (Mo. App. S.D. 2003) (finding sufficient evident to infer the defendant had contact with the child's anus when the child testified the defendant's rubbing his "butt" stung, the defendant struck "drugs" up his "butt," and a physical examination revealed medical abnormalities of his anus); *State v. White*, 873 S.W.2d 874, 878 (Mo. App. E.D. 1994) (finding sufficient evidence when the child testified the defendant put his penis "up his butt" and did "push-ups" on him, and the child had difficulties controlling his bowels immediately after returning from the defendant's home); *State v. Moore*, 721 S.W.2d 141, 143 (Mo. App. E.D. 1986) (finding sufficient evidence to infer the defendant had contact with the child's anus because the child testified the defendant tried to force his penis up the child's "behind" and medical examination revealed abnormal redness around the child's anus); *State v. O'Neal*, 651 S.W.2d 634, 637 (Mo. App. S.D. 1983) (finding sufficient evidence to infer the defendant had contact with the child's "anus" when he placed the child on his lap, touched her "bottom" with his "thing … [w]hat he went to the bathroom with" and child "tried not to cry" because it "hurt '[p]retty bad'" (alterations in original)).

Here, Child testified Defendant "tried to stick [his penis] in [her] butt." In a forensic interview, which was recorded and played for the jury, Child stated she felt Defendant's penis in her "butt" and her "butt" was hurting when Defendant tried to put

his penis in it.  Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence from which the jury could infer Defendant's penis touched Child's anus, despite the lack of anatomical specificity.  Hence, there was sufficient evidence to support a count of statutory sodomy and one count of incest.  This point is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
GEORGE W. DRAPER III, Judge

Wilson, C.J., Russell, Breckenridge and Ransom, JJ., concur;
Powell, J., concurs in separate opinion filed; Fischer, J.,
concurs in separate opinion filed; Wilson, C.J., Russell,
Breckenridge and Ransom, JJ., concur in separate opinion of Powell, J.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                )
                                   )
          Respondent,      )
                                   )
v.                                  )      No. SC99469
                                   )
DAVIUNE C. MINOR,             )
                                   )
          Appellant.       )

## CONCURRING OPINION

I concur with the well-written and reasoned principal opinion. I write separately only to address the grave risks inherent in admitting allegations of unadjudicated propensity evidence in child sexual abuse cases and the futility of using continuing objections to preclude the admission of propensity evidence when the underlying objection involves balancing the probative value of accumulating evidence against its prejudicial effect.

### I.    The Inherent Risks of Unadjudicated Propensity Evidence

The root of the issues raised in this case arises from the nature of the propensity evidence presented. It was the evidence of uncharged accusations of child abuse suffered by L.W., a victim not named in the underlying charges, that infected Daviune C. Minor's

trial with unfair prejudice. The State sought to demonstrate Minor had the propensity to sexually abuse children by presenting evidence of an unadjudicated allegation that Minor had deviate sexual intercourse with L.W. The unfair prejudice generated by the presentation of this evidence should forewarn trial courts from admitting mere allegations of unadjudicated prior bad acts in future cases.

Our legal system has a long history of ensuring those accused of crimes are tried only for the criminal offenses charged and not for the sins of their past. *State v. Reese*, 274 S.W.2d 304, 307 (Mo. banc 1954); *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992); *State v. Williams*, 548 S.W.3d 275, 281 (Mo. banc 2018) ("[I]t is safe to say a general prohibition against the use of propensity evidence in criminal cases has been firmly engrained in American jurisprudence throughout much of the nation's history."); *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) ("Although ... 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." (alteration in original)); *Michelson v. United States*, 335 U.S. 469, 476 (1948) ("The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."). One may agree or disagree with this legal tradition, but clearly the people of this State thought it necessary to carve out an exception to this intrinsic value, given the compelling and unique nature of child sex offenses.

In 2014, the citizens of this State amended the constitution to permit the admission of evidence of prior criminal acts, charged or uncharged, to demonstrate a defendant's propensity to commit sexual offenses involving a victim younger than 18 years of age. Mo. Const. art. I, § 18(c). But article I, section 18(c) provides an important limitation to the use of such evidence. If the probative value of the propensity evidence is substantially outweighed by the danger of unfair prejudice, the evidence may be excluded. *Id.* This probative-versus-prejudicial balancing test is fundamental to article I, section 18(c). *See Williams*, 548 S.W.3d at 284-85. In a due process challenge to the legality of this constitutional provision, our Court emphatically proclaimed the probative value of propensity evidence **must not** be substantially outweighed by the danger of unfair prejudice. *Id*. at 283-86 (reviewing several federal circuit court cases that found the admission of certain propensity evidence in cases concerning sexual assault is not unconstitutional because it is tempered by the probative-versus-prejudicial balancing test).

This Court's prior cases addressing article I, section 18(c) dealt with evidence of prior adjudicated convictions. *See, e.g., Williams*, 548 S.W.3d at 288; *see also State v. Prince*, 534 S.W.3d 813, 820 (Mo. banc 2017). This evidence manifested as exhibits and testimony reciting the existence of a prior conviction or an admission of guilt involving a criminal offense that would demonstrate the defendant's propensity or tendency to commit the charged crime or crimes and did not involve the testimony of victims or witnesses of these horrendous crimes. *Williams*, 548 S.W.3d at 279; *Prince*, 534 S.W.3d at 817. This Court held such prior convictions or admissions of guilt may be admissible evidence under article I, section 18(c). *See Williams*, 548 S.W.3d at 285-86; *see also Prince*, 534 S.W.3d

3

at 819.  These previous cases, however, did not wrestle with the additional risks posed by presenting evidence of unadjudicated prior criminal acts.

Evidence of unadjudicated prior bad acts poses at least two risks not present in evidence of past criminal convictions and admissions of guilt.  First, instead of the stoic and emotionless presentation of an exhibit evincing the existence of a prior conviction, we have a living, breathing person recounting unfathomable details of traumatic events and abuse.  Second, on top of the increased emotional effect of such evidence lies the fundamental problem of establishing the defendant engaged in the unadjudicated criminal act.  "Before propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act." *Williams*, 548 S.W.3d at 288; *see also* Mo. Const. art. I, § 18(c).  The presentation of evidence necessary to demonstrate the defendant committed an unadjudicated act effectively creates a trial within the trial.  Unlike an exhibit of one or more prior criminal convictions that speaks for itself, allegations of unadjudicated, prior criminal acts inescapably will be accompanied and supported by evidence demonstrating the allegations occurred.  This evidence may include eye witnesses, forensic medical examiners, psychologists or psychiatrists, and other witnesses who are allowed to testify regarding the alleged child victim's prior statements under section 491.075, RSMo Supp. 2012; the list goes on and on.  In addition to the emotional testimony from an alleged victim of sexual abuse, therefore, a mountain of other evidence, extrinsic to the underlying criminal charges, is often necessary to establish the defendant committed the alleged, unadjudicated sexual abuse.

4

In his reply brief, Minor contends such extrinsic evidence—evidence that merely supports the alleged victim's testimony—is not propensity evidence under article I, section 18(c). Minor maintains this evidence would not itself tend to show the defendant had the propensity to commit the charged criminal act, making it inadmissible. But Minor's arguments are unavailing because they fail to appreciate the role of this extrinsic evidence. To be legally admissible under article I, section 18(c), the probative value of the unadjudicated allegation of criminal activity must not be substantially outweighed by the danger of unfair prejudice. The supporting collateral and extrinsic evidence directly impacts the unadjudicated allegation's probativeness and may be necessary to assess the allegation's probative-versus-prejudicial effect and determine its admissibility under article I, section 18(c).[1] In such a situation, extrinsic evidence may be admissible because its purpose for admission is to establish the alleged unadjudicated act more likely occurred, "demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." Mo. Const. art. I, § 18(c).

But even if the State could not introduce such extrinsic evidence directly under article I, section 18(c), as Minor contends, the evidence would become admissible once the alleged victim's testimony is called into question. Once the State calls the alleged victim to testify regarding the unadjudicated prior offense, the defense inevitably will challenge the veracity and credibility of this testimony on cross-examination. The defendant may

---

[1] If extrinsic evidence is not relevant and admissible for this purpose, then any extrinsic evidence the defendant offers to challenge and contradict the alleged victim's testimony likewise would be inadmissible.

also attempt to contest the relevance and probative value of this propensity evidence with extrinsic evidence contradicting the alleged victim's testimony.[2] In response, the State will inevitably attempt to support, bolster, and corroborate the credibility of the alleged victim's testimony with additional collateral and extrinsic evidence. *See State v. McFadden*, 391 S.W.3d 408, 430 (Mo. banc 2013) ("Prior consistent statements are admissible to rehabilitate the witness.").

Once the trial court ventures into allegations of unadjudicated prior criminal acts, Pandora's box is opened, and highly relevant and probative evidence related to the circumstances surrounding these allegations mounts like snow in a blizzard. The confusion and unfair prejudice from this mounting extrinsic and collateral evidence weighs heavily against the probative value of the originating unadjudicated allegation. Left unchecked, one could easily imagine a trial court conducting numerous mini-trials over the legitimacy of the defendant's uncharged prior criminal acts while also adjudicating the guilt of one discrete criminal offense allegedly perpetrated against a different victim.

This case presents this very issue. Minor was charged with sexually abusing a single child. In addition to the direct evidence supporting these charges, the circuit court admitted propensity evidence under article I, section 18(c) regarding L.W. and D.J., two additional

---

[2] The defense is permitted "to admit highly probative and relevant evidence for the jury's consideration in determining whether to credit a witness's testimony." *Mitchell v. Kardesch*, 313 S.W.3d 667, 681 (Mo. banc 2010). Consequently, the defense can introduce extrinsic evidence to impeach a witness because of interest or bias and to suggest the witness lacked the ability to accurately perceive the events underlying the allegations. *Id.* at 679. The defense can do so "regardless of whether the subject of the extrinsic evidence is independently material to the case." *Id.*

6

children Minor allegedly abused. The evidence involving D.J. was limited to an exhibit attesting to a prior juvenile adjudication in which Minor admitted he sexually abused D.J. The evidence regarding L.W. involved unadjudicated allegations of sodomy. L.W. testified about the abuse she suffered. To support and corroborate L.W.'s allegations, the State also called L.W.'s mother and L.W.'s brother to testify.[3] Direct and cross-examination of L.W., L.W.'s mother, and L.W.'s brother spanned two of the four days of trial devoted to the State's case-in-chief and took up 228 pages of transcript. Defense counsel's cross-examination of L.W.'s mother alone spanned 59 pages of the transcript. The circuit court noted, "We're trying the [charged offense] case, and I am concerned that we're heading way to [sic] far down the rabbit hole of the other case." The jury was equally concerned and confused. During jury deliberations, the jury's first question was, "Are there charges against defendant regarding [L.W.][?]" The compounding testimony from L.W., L.W.'s mother, and L.W.'s brother clearly presented a danger of unfair prejudice warranting exclusion under article I, section 18(c).

To avoid this inevitable unfair prejudice, circuit courts rarely should admit allegations of unadjudicated prior criminal offenses. The emotional characteristics of personal testimony increase the already inherently prejudicial nature of this type of propensity evidence. In addition, the inevitable mountain of evidence necessary to demonstrate and challenge whether the prior, uncharged allegations actually occurred—

---

[3] The State additionally attempted to call a detective who investigated L.W.'s allegations and referred L.W.'s case to the prosecutor's office. The circuit court excluded this evidence.

and the confusion this evidence creates—will always pose a danger of unfair prejudice that is likely to far exceed its probative value. Consequently, evidence of unadjudicated allegations, both the alleged victim's testimony and any accompanying extrinsic evidence, will rarely survive the probative-versus-prejudicial balancing test in article I, section 18(c). If courts choose to admit such evidence, the emotional characteristics of this evidence must somehow be contained. In addition, the extrinsic and collateral evidence surrounding the alleged victim's testimony must, in some manner, be fairly limited, so the resulting confusion and unfair prejudice does not spin out of control and grow exponentially greater than the probative value. As the trial judge from this case noted, "I will say that [article I, section 18(c)] has led us down a rabbit hole that there may be no looking back." Take this sage trial judge's advice: Do not take the proverbial rabbit hole. The Wonderland on the other side consists of an endless spiral of extrinsic, collateral, and unfairly prejudicial evidence that undoubtedly will result in confusion and unfair prejudice, requiring a maddening retrial of a child sex case.[4]

II.    The Pitfalls of Continuing Objections in the Probative-Versus-Prejudicial Balancing Test of Propensity Evidence

As the principal opinion and Judge Fischer's concurring opinion aptly note, this Court need not travel down the unadjudicated propensity evidence rabbit hole in this case.

---

[4] "[S]aid the [Cheshire] Cat: 'we're all mad here. I'm mad. You're mad.'
'How do you know I'm mad?' said Alice.
'You must be,' said the Cat, 'or you wouldn't have come here.'" Carroll, Lewis, *Alice's Adventures in Wonderland* (1920).

This issue is not properly preserved. I nevertheless write separately on this topic to warn trial attorneys of the pitfalls of relying on continuing objections to challenge propensity evidence.

Crucially, as the principal opinion notes, Minor never objected to L.W., L.W.'s brother, or L.W.'s mother at trial, either at the outset of their testimony or during their testimony. In pretrial hearings addressing propensity evidence, Minor broadly objected to the use of propensity evidence and, specifically, any witness testifying in support of L.W. But Minor never lodged a specific objection at trial to the testimony provided by L.W., L.W.'s mother, or L.W.'s brother. Instead, Minor lodged a continuing objection during the pretrial stages as to this propensity evidence, but, as the principal opinion concludes, this did not suffice.

The circuit court's rulings during the pretrial stages were interlocutory and subject to change. It is not uncommon for a trial court to make a pretrial evidentiary ruling based on assumptions as to the nature of the evidence or how it will be presented, but the evidence may come in at trial very differently than anticipated.[5] This is why pretrial rulings are interlocutory, and the objecting party must renew the objection when the disputed evidence is sought to be introduced at trial. *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016) (noting allegations of error are not preserved unless objected to during the trial).

---

[5] Homicide photographs, for example, may be deemed relevant and admissible without being reviewed in a pretrial ruling, but the number and the nature of the photographs offered during the trial may end up posing a significant threat of unfair prejudice. The defense consequently would need to object at trial to the number of photographs admitted or to the manner in which the State displays them to the jury.

This is especially true when a trial court makes a pretrial ruling as to propensity evidence, as it did here. Compounding the already interlocutory nature of a pretrial ruling is the propensity evidence probative-versus-prejudicial balancing test, which further renders admissibility subject to change at any point during proceedings in the circuit court. Consequently, it is futile to use a continuing objection to preclude the admission of propensity evidence because the underlying objection involves balancing the probative value of accumulating evidence against its prejudicial effect.

This case demonstrates exactly why this is true. The propensity evidence introduced at trial included testimony from L.W.'s brother and L.W.'s mother, but this testimony was never discussed or contemplated when the circuit court made its original pretrial ruling allowing propensity evidence regarding L.W.'s allegations. At trial, it was necessary to continuously weigh and balance the probative value of each person's testimony against its prejudicial effect, to ensure any unfair prejudice did not mount to a point that it invalidated the court's original pretrial ruling admitting evidence of L.W.'s unadjudicated allegations. I do not suggest Minor had to raise an objection with every question or piece of evidence when a continuing objection was granted, but a separate, particularized objection must be lodged when significant new evidence is introduced or a new witness is called to testify when the granting of a continuing objection was not based on such evidence and the court may not have initially realized such evidence would be introduced.

It is the responsibility of *the party seeking to exclude this evidence* to advise and notify the court that the *quantum* of propensity evidence—not merely its inherently prejudicial nature—has shifted the scales, making the continued onslaught of the evidence

10

inadmissible. "Missouri courts reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf of a party during witness examination." *State v. D.W.N.*, 290 S.W.3d 814, 819 (Mo. App. 2009); *see also State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. 2004) ("Uninvited interference by the trial judge … risks injecting the judge into the role of participant and invites trial error."). While a trial court may be concerned the danger of unfair prejudice from the mounting evidence regarding the allegations of unadjudicated prior bad acts has overcome its probative value, this Court should refrain from finding the trial court erred by not *sua sponte* raising the issue. The defendant may have strategic and tactical reasons for not contesting the evidence's admission once the court has made a preliminary ruling indicating it will allow this particular topic of evidence. Here, for example, after the circuit court ruled in pretrial proceedings that it would allow L.W. to testify, Minor indicated he was considering having L.W.'s brother and L.W.'s mother testify on his behalf, and Minor used testimony elicited from L.W.'s mother in his closing argument to assert he was not guilty of the charged offenses.

For this reason, defendants must be required to lodge appropriate objections during trial when the scales tip and the danger of unfair prejudice substantially outweighs the probative value of the offered propensity evidence, as it did in this case, when the witnesses supporting L.W.'s unadjudicated allegations of abuse testified. It was Minor's responsibility to defend himself in a manner he saw fit, and it is inappropriate to shift this trial strategy decision to the circuit court. If the circuit court did not respond accordingly to a properly raised objection, then this Court's role is to correct this error. But, in the absence of an objection, this Court should not find the circuit court erred.

11

For these reasons, I concur with the principal opinion but caution against the use of propensity evidence involving allegations of prior unadjudicated criminal acts and the use of continuing objections to preclude the admission of propensity evidence.

_____
W. Brent Powell, Judge

12



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )
                         )
         Respondent,   )
                         )
v.                      )   No. SC99469
                         )
DAVIUNE C. MINOR,     )
                         )
         Appellant.    )

## CONCURRING OPINION

I concur with the analysis of points relied on two, three, four, and five and the result of the principal opinion. I would not provide *ex gratia* review of point relied on one because it fails to comply with Rule 84.04 and preserves nothing for appellate review.

Rule 84.04's briefing requirements are mandatory. *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005).

> "Rule 84.04 is not merely an exhortation from a judicial catechism nor is it a suggestion of legal etiquette." *Shockley v. State*, 579 S.W.3d 881, 917 n.9 (Mo. banc 2019). "The function of [points relied on] is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (alteration in original) (quoting *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)).

Slip Op. at 4.[1]

---

[1] "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in

Rule 84.04(d) requires each point relied on to identify a single claim of reversible error, concisely state the legal reasons for that claim of error, and summarily explain why the stated legal reasons support the claim of error. "A point relied on violates Rule 84.04(d) when it groups together multiple contentions not related to a single issue and is subject to dismissal." *Mo. Bankers Ass'n, Inc. v. St. Louis Cnty.*, 448 S.W.3d 267, 271 n.5 (Mo. banc 2014). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Bowers v. Bowers*, 543 S.W.3d 608, 615 n.9 (Mo. banc 2018).

Minor's first point relied on is as follows:

The [circuit] court abused its discretion in overruling Minor's objections and allowing evidence under Mo. Const. Art. I, section 18(c) that Minor had deviate sexual intercourse (a) as an adult with L.W. in the spring of 2012, and (b) as a juvenile with D.J. in September 2000. The evidence, presented through the testimony of L.W., M.W., and T.F., and State Exhibits 1, 2, 3, 15 and 16, was substantially more prejudicial than probative, violating Minor's right to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 22(a) of the Missouri Constitution and was inadmissible under Art. I, § 18(c), in that (a) as to L.W., the testimony had little probative value, the testimony was lengthy, detailed, not impassionate, and graphic, and the jury was left to speculate that Minor was not punished for the alleged crime; (b) as to D.J., the 2000 act was remote in time and not sufficiently similar to the charged crime to show a current propensity to commit the charged crime; and (c) the State repeatedly used the evidence in closing for an improper purpose, to argue that Minor was a sex predator and a serial child sodomizer who preyed on his victims and had a reign of terror in the jurors' community since 2000.

Minor's point is clearly multifarious in violation of Rule 84.04(d).

---

sound policy. . . . It is not the function of the appellate court to serve as advocate for any party to an appeal." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

The principal opinion concludes Minor's point relied on violates Rule 84.04(d) in more than a technical way but, nonetheless, addresses the arguments *ex gratia*.[2] As this Court's more recent jurisprudence provides: "this Court's preference to reach the merits of a case when presented with a deficient brief must be balanced with the implication of such consideration." *Lexow*, 643 S.W.3d at 505. I agree with the statement in the principal opinion that "[t]he appellate courts' continued reiteration of the importance of the briefing rules without enforcing any consequence implicitly condones continued violations and undermines the mandatory nature of the rules." Slip Op. at 6 (internal quotation and citation omitted).

Based on these considerations, I would not review the first point relied on. However, I concur with the principal opinion's analysis of the remaining points relied on and the result in this case to affirm.

_____
Zel M. Fischer, Judge

---

[2] "Rather than gratuitously excusing violations of this Court's briefing rules, this Court should consistently enforce its rules as written and decline to review points relied on that violate briefing rules." *Alpert v. State*, 543 S.W.3d 589, 601 (Mo. banc 2018) (Fischer, J., dissenting).